# Scandinavia Belting Company *v.* Macan Jr. Company, Appellant.

*Contracts—Sales—Counterclaims — Conflicting evidence — Case for jury—Construction—Intention—Course of dealing—Waiver.*

1. In an action for goods sold and delivered to defendant corporation, it appeared that plaintiff had had various contracts with defendant's president individually whereby defendant's president was appointed plaintiff's sales agent; that a new contract bearing date of May 1, 1912, but formally executed May 20th, was made between plaintiff and defendant's president individually, wherein he was described as plaintiff's agent, and that such contract annulled all prior contracts, and provided "this contract shall remain in force while the agent does an annual total of sales of $40,000." Thereafter plaintiff did a large business with defendant in the course of which the indebtedness occurred. Defendant did not deny the indebtedness, but sought to counterclaim for damages for the alleged wrongful termination of the contract, averring that it had become the owner of the contract. The evidence was conflicting as to whether or not the contract had been assigned to defendant and there was evidence that the contract was not owned by the defendant and if it had been the provision requiring the purchase of $40,000 worth of goods had not been complied with. *Held,* the case was for the jury and a verdict for the plaintiff will be sustained.

2. In such case the court properly charged the jury that they should consider the prior contracts and the course of dealing thereunder so far as they might throw light upon the new contract, because defendant set up the new contract and claimed under it, and was bound by its provisions, one of which was the cancellation of prior contracts.

3. Where in such case the sales during the year ending May 1, 1914, according to plaintiff's prices amounted to less than $35,000, defendant's contention that the sales should be computed on the prices received by its president or by it was without merit where the prior dealings of the parties and their own construction of the contract indicated that the $40,000 was to be computed on the amount of sales made by plaintiff to its agent.

4. As the first year's sales under the new contract also fell short of the $40,000, the court properly instructed the jury that they might consider whether or not plaintiff had waived that clause in the contract.

5. In such case it was rightly held that the year ended on May 1st, which was the date of the contract, and that it was not material that the contract was not actually executed until May 20th.

Argued March 6, 1917. Appeals, Nos. 86 and 87, Jan. T., 1916, by defendant, from judgment of C. P. Northampton Co., Sept. T., 1914, Nos. 7 and 18, on verdict for plaintiff, in case of Scandinavia Belting Company v. Macan Jr. Company. Before MESTREZAT, POTTER, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Assumpsit for goods sold and delivered and on promissory notes. Before STEWART, P. J.

The facts appear in the opinion of the Supreme Court.

Verdict for plaintiff at No. 7, Sept. T., 1914, for $1,-706.17 and at No. 18, Sept. T., 1914, for $5,003.53 and judgment thereon. Defendant appealed.

*Errors assigned* were instructions to the jury.

*Aaron Goldsmith*, with him *Kirkpatrick & Maxwell*, for appellant.

*Robert A. Stotz*, with him *F. W. Edgar*, for appellee.

OPINION BY MR. JUSTICE WALLING, May 22, 1917:

These cases, between the same parties, involving the same questions, one on an account for goods sold and delivered and the other on two promissory notes, were tried

together in the court below and will be so considered here.

Plaintiff is a corporation with principal office in New York and as such had charge of the sale in this country of foreign made Scandinavia belting; for which purpose it had various agencies, one of which was that of Macan & Huntington, established in 1901, of which the senior member was George C. Macan, Jr. This agency continued until 1903, when a new contract was made between the plaintiff and Macan individually, which in 1904 was superseded by one with the Macan Jr. Company, a partnership composed of said Macan and J. M. Driesbach. This contract was for the exclusive agency for sale of the belting in the States of Pennsylvania and New Jersey, and for conveying belting for coal and cement works of the United States. It is therein provided that: "This agreement to remain in force so long as the annual turn-over reaches the sum of fifteen thousand dollars ($15,000.00)," with the further provision that the Macan Jr. Company was not to handle any other kind of belting. This contract was cancelled January 1, 1907, by virtue of a new agreement embracing largely the same provisions, except that it was made with Mr. Macan individually and not with the firm. In November, 1907, the defendant, Macan Jr. Company, was chartered as a Pennsylvania corporation, with office at Easton; Mr. Macan and Mr. Driesbach were its principal stockholders, the former having four hundred and the latter two hundred shares. The partnership had business, aside from that under the contract with plaintiff, and its assets seem to have been transferred to the corporation at a valuation of sixty thousand dollars in exchange for capital stock, which assets were described in the resolution of the defendant's board of directors as including, inter alia, "exclusive State and United States agencies, good will of established business and surplus earned." The agency for Scandinavia belting, then apparently belonging to Macan, was not specifically men-

tioned as a part of these assets; but thereafter plaintiff did much of its business directly with defendant while not formally recognizing it as the owner of the contract of January 1, 1907. Some acts and declarations of Macan, made long after the formation of the corporation, indicate that he still regarded himself as the owner of the contract, and whether it belonged to defendant, or the latter was merely a subagent under Macan, was one of the questions in the case.

A new contract bearing date of May 1, 1912, but formally executed on May 20th, was made between plaintiff and Macan individually, in which he is described as "the agent" and wherein it is provided, inter alia, that "Whereby, in consideration of mutual promises, it is agreed that all previous contracts are hereby annulled, and that from the date above mentioned (May 1, 1912), ............That the agent shall not sell or offer any textile belt other than Scandinavia belting obtained from the company (plaintiff), unless he obtains the written consent of the company............This contract shall remain in force while the agent does an annual total of sale of forty thousand dollars." It made certain other changes from that of January, 1907, including change of territory embraced therein, etc. Macan was defendant's president, and it contends that the making of the new contract in his name was a mistake and that in fact it was the contract of the Macan Jr. Company. But the weight of the evidence and all the circumstances justify the conclusion that it was the intention of both plaintiff and Macan that the new agreement should be made in his name and not in that of the company. However, plaintiff thereafter continued to do business with defendant as it had before, and in the doing thereof the indebtedness was incurred for which these suits were brought. Plaintiff declared the new contract terminated on May 1, 1914, on the allegation that the sales for the preceding year did not amount to forty thousand dollars, and it was also suggested that

sales of other belting had been made in violation of the contract. In these suits defendant admitted the correctness of plaintiff's claims, but sought to set off damages by reason of said termination of the new contract. The jury found for plaintiff for the full amount of the claims.

The contract being in the name of Mr. Macan, the burden was on the defendant to establish ownership thereof before its alleged breach could be interposed as a set-off. And such ownership depended largely on conflicting parol evidence and was necessarily for the jury. We agree with the trial judge that the real thing (as he expresses it) was the contract of 1912, but that the jury could consider the prior contracts and the course of dealing thereunder, so far as they might throw light upon the new contract. This is so because defendant sets up the new contract and claims under it, and hence is bound by its provisions, one of which is the cancellation of prior contracts; and aside from that defendant makes no claim to damages for breach of a prior contract. The sales during the year ending May 1, 1914, according to plaintiff's prices, amounted to less than $35,000.00, but defendant contends that the sales should be computed on the prices received by Macan or by the Macan Jr. Company. The language of that clause in the contract might seem to warrant such construction, but, considering the contract as a whole, the prior dealings of the parties and their own apparent construction of that provision, we agree with the conclusion of the learned trial judge that the forty thousand dollars should be computed on plaintiff's prices. This construction is strengthened by the fact that a schedule of such prices is attached to the contract, and that, as part of the goods were consigned directly to the defendant, the plaintiff had no means of knowing to whom nor for what amount they were resold. Macan's letters seem to justify the conclusion that he understood the matter was to be adjusted on plaintiff's prices. As the first year's sales

under the new contract also fell short of the forty thousand dollars, the court instructed the jury that they might consider whether or not plaintiff had waived that clause in the contract.   It was rightly held that the year ended on May 1st, as that was the date of the contract, and the fact that it was not actually executed until May 20th, is not controlling.   And the parties construed the contract as taking effect May 1, 1912.

Defendant contended that the failure to sell the required amount resulted from plaintiff's interference, and that was referred to the jury, as was also the question of defendant's damages.   We find nothing to justify the criticism that the charge was unfair or inadequate.   The controlling questions were largely of fact and were properly submitted to the jury.   The verdicts are sustainable on the ground that the contract was with Macan individually and that defendant was a subagent, or on the ground that, as the sales for the year ending May 1, 1914, were under the forty thousand dollars, plaintiff was within its rights in declaring the contract cancelled.

The assignments of error are overruled and the judgments are affirmed.